IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MEENA ENTERPRISES, INC., ET AL. :
:
:
    v. : Civil Action No. DKC 12-1360
:
MAIL BOXES ETC., INC. :
:

**MEMORANDUM OPINION**

Presently pending and ready for review in this breach of contract case is the motion to stay proceedings and compel arbitration filed by Defendant Mail Boxes Etc., Inc. ("MBE") (ECF No. 9). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

**I. Background**

    **A. Factual Background**

Except as otherwise noted, Plaintiffs Meena Enterprises, Inc. ("Meena") and Sabapathy Sengottuvelu allege the following facts in their complaint. (ECF No. 2).

On April 7, 1997, College Park Enterprises, Inc. signed two agreements with MBE ("the Franchise Agreements") to operate two shipping, mailing, and printing services stores as MBE

franchises.[1]  Both stores were located in College Park, Maryland, one on Lehigh Road and the other in the University of Maryland student union.  The Franchise Agreements contained a section titled "Covenant Not To Compete."  (ECF No. 9-1, at 39; ECF No. 9-2, at 39).  The Franchise Agreements also included an arbitration clause, which provides, in relevant part:

> [E]very controversy, claim or dispute arising out of or in connection with the negotiation, performance or non-performance of this Agreement, including, without limitation, any alleged torts and/or claims regarding the validity, scope and enforceability of this Section, shall be solely and finally settled by binding arbitration conducted in the locality in which the franchise is located[.]

(ECF No. 9-1, at 41; ECF No. 9-2, at 41).[2]  The Franchise Agreements further state that "[t]he agreement is to be construed under and governed by the laws of the State of California except for any provisions which are found to be unenforceable in California[.]"  (ECF No. 9-1, at 46-47; ECF No. 9-2, at 46-47).

---

[1] Although Plaintiffs allege in their complaint that College Park Enterprises, Inc. "entered into the Franchise Agreements with MBE" (ECF No. 2 ¶ 8), an entity called Mail Boxes Etc. USA, Inc. actually signed the contracts (ECF No. 9-1, at 1; ECF No. 9-2, at 1).  As set forth below, the precise relationship between MBE and Mail Boxes Etc. USA, Inc. is unclear.

[2] MBE attaches copies of the Franchise Agreements to its motion.  (ECF Nos. 9-1, 9-2).

On or about March 2, 2001, United Parcel Service ("UPS") purchased MBE. At that time, UPS announced that MBE franchises would continue to offer choices among delivery services (*e.g.*, UPS, Federal Express, and Airborne Express), but that "the relationships may be altered somewhat" as a result of UPS's acquisition of MBE. (ECF No. 2, ¶ 11). Allegedly, however, UPS "intended to convert the [MBE] stores to UPS stores" from the outset. (*Id.* ¶ 13).

On August 2, 2001, Plaintiffs entered into a "Transfer Agreement" to purchase the two MBE franchises owned by College Park Enterprises, Inc. Per the terms of the Transfer Agreement, Plaintiffs agreed to assume "all of College Park Enterprises, Inc.'s rights and duties under [the Franchise Agreements]" and also acknowledged that they had received copies of the Franchise Agreements and were familiar with their terms and conditions. (ECF No. 16-1, ¶¶ 1.a & 3).[3] MBE signed the Transfer Agreement to acknowledge its consent to the assignment of the Franchise Agreements from College Park Enterprises, Inc. to Plaintiffs. (*Id.* ¶ 1.b). In deciding to enter the Transfer Agreements, Plaintiffs purportedly relied on MBE's public representations that it would continue to operate its franchises as MBE stores

---

[3] MBE attaches a copy of the Transfer Agreement to its reply. (ECF No. 16-1).

3

because the MBE "name and concept" provided value to the stores. (ECF No. 2 ¶¶ 51-52).

Despite MBE's and UPS's public representations to the contrary, UPS began requiring "most of [the] MBE franchises" to change their names to "The UPS Store" and "to aggressively market [UPS] products and services." (*Id.* ¶ 20). As UPS stores, franchisees could still offer competitors' products and services, but "only if the customers specifically requested those services." (*Id.*). Federal Express, however, "will not allow its products or services to be offered by UPS Stores." (*Id.* ¶ 21).

During the initial term of the Franchise Agreements, MBE and UPS allowed Plaintiffs to continue to operate their franchise in the University of Maryland student union as an MBE store because "it was required to offer Federal Express shipping services" under its lease with the school. (*Id.* ¶ 24). When it came time to renew the Franchise Agreements, however, MBE purportedly insisted that the University of Maryland location be converted to a UPS store. Plaintiffs advised MBE that a conversion was not possible because the University of Maryland requires its shipping store to offer Federal Express services. Given MBE's alleged lack of marketing support for the MBE brand, Plaintiffs requested that MBE allow it to operate the student union location as an independent store after the Franchise

4

Agreements expired. MBE did not respond to this request prior to expiration in August 2011.

With respect to Plaintiffs' other MBE franchise on Lehigh Road, MBE allegedly required Plaintiffs to spend $50,000 in renovations in order to renew the Franchise Agreement. Plaintiffs informed MBE that they could not afford such a sum, but nonetheless paid the renewal fee for the Lehigh Road store prior to expiration of the Franchise Agreements in August 2011.

### B. Procedural Background

On January 27, 2012, Plaintiffs filed a complaint in the Circuit Court for Prince George's County, Maryland, asserting claims against MBE for breach of contract, fraudulent inducement, and negligent misrepresentation. Plaintiffs also seek a declaratory judgment that precludes MBE from enforcing the non-competition covenants in the Franchise Agreements. Plaintiffs allege compensatory damages in excess of $1 million and also request costs and attorneys' fees.

On May 3, 2012, MBE filed a notice of removal to this court, alleging diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1). On May 24, 2012, MBE filed a motion to stay the proceedings and compel arbitration of Plaintiffs' claims pursuant to the Federal Arbitration Act ("FAA"). (ECF No. 9). Plaintiffs opposed this motion (ECF No. 13), and MBE filed a reply (ECF No. 16).

## II. The Federal Arbitration Act

Under the FAA, a party to an arbitration agreement may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. §§ 3-4.  Section 2 of the FAA requires the enforcement of agreements to arbitrate as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The final clause of section 2, the "savings clause," permits agreements to arbitrate to be avoided on state-law grounds that are "generally applicable" to all contracts and that do not "stand as an obstacle to the accomplishment of the FAA's objectives."  *AT&T Mobility LLC v. Concepcion*, --- U.S. ---, 131 S.Ct. 1740, 1748 (2011); *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (explaining that an arbitration provision may be found unenforceable based on "generally applicable contract defenses, such as fraud, duress, or unconscionability").

In deciding a motion to compel arbitration pursuant to the FAA, it is necessary to "engage in a limited review to ensure that the dispute is arbitrable." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (internal quotation marks and citation omitted). This determination involves two steps: "First, we determine who decides whether a particular dispute is arbitrable: the arbitrator or the court. Second, if we conclude that the court is the proper forum in which to adjudicate arbitrability, we then decide whether the dispute is, in fact, arbitrable." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012). In this Circuit, "when all of the issues presented in a lawsuit are arbitrable," "dismissal is a proper remedy." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001).

**III. Analysis**

Plaintiffs oppose arbitration on two grounds. First, they contend that the parties to this action – none of whom are signatories to the Franchise Agreements – never entered into an agreement to arbitrate. Second, they assert that the arbitration clauses in the Franchise Agreements are procedurally and substantively unconscionable under applicable state law.

### A. Formation of an Agreement to Arbitrate

Plaintiffs first contend that the parties to this action never formed an agreement to arbitrate because the Franchise Agreements attached to MBE's motion are signed by College Park Enterprises, Inc., and Mail Boxes Etc. USA, Inc. (as opposed to Plaintiffs and MBE). In other words, Plaintiffs question whether MBE, as a nonsignatory, can enforce the arbitration clauses contained within the Franchise Agreements. This argument – which is properly addressed by the court as opposed to the arbitrator – is without merit.[4]

As an initial matter, Plaintiffs are bound by the terms of the Franchise Agreements by virtue of the Transfer Agreement, a document that Plaintiffs refer to in their complaint (ECF No. 2

---

[4] Plaintiffs' first argument focuses on whether the parties formed an agreement to arbitrate in the first instance – an issue that is distinct from whether such an agreement is valid and enforceable under state law. *See Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 444 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded."). Thus, although the Franchise Agreements decree that "claims regarding the validity, scope, and enforceability" of the arbitration clauses themselves must be decided *via* arbitration (ECF No. 9-1, at 41; ECF No. 9-2, at 41), threshold issues of contract formation – including equitable estoppel – are properly subject to judicial determination. *See In re Toyota Motor Corp. Unintended Acc. Mktg., Sales Practices, & Prods. Liab. Litig.*, 838 F.Supp.2d 967, 986 (C.D.Cal. 2012) (refuting "the broad proposition that in the face of a delegation provision, the [c]ourt should defer to the arbitrator entirely and make no inquiry into whether a non-signatory may pursuant to equitable estoppel enforce an agreement to arbitrate against a signatory").

8

¶ 9) and that MBE attaches to its reply (ECF No. 16-1). Per this contract, Plaintiffs became the assignees of College Park Enterprises, Inc., and expressly assumed the rights and duties set forth in the Franchise Agreements: "Through [Plaintiffs'] signature below, [Plaintiffs] agree[] that MEENA Enterprises, Inc. shall become the assignee of the 1997 Franchise Agreements, hereby assuming all of College Park Enterprises, Inc.'s rights and duties under such 1997 Franchise Agreements." (*Id.* ¶ 1.a). These "rights and duties" clearly encompass the duty to arbitrate "[e]very controversy, claim or dispute arising out of or in connection with" the Franchise Agreements. (ECF No. 9-1, at 41; ECF No. 9-2, at 41).

Second, despite Plaintiffs' argument to the contrary, MBE can compel arbitration even though it was not a signatory to the Franchise Agreements. It is true that MBE does not disclose the relationship between MBE and Mail Boxes Etc. USA, Inc., the entity that signed the Franchise Agreements, nor does MBE otherwise explain how it is privy to the Franchise Agreements.[5] MBE does, however, contend that the Franchise Agreements'

---

[5] All that MBE offers in response to Plaintiffs' argument regarding its nonsignatory status is a declaration by MBE's Senior Vice President of Franchise Services, who notes that Mail Boxes Etc. USA, Inc. is the "prior franchisor of Mail Boxes Etc. Centers." (ECF No. 16-2, Higginson Decl. ¶ 1). This statement indicates that MBE is a successor-in-interest to Mail Boxes Etc. USA, Inc., but does not settle the matter with any clarity.

arbitration clause should be enforced against Plaintiffs "[b]ecause all of the Plaintiffs' claims against MBE are based upon rights they allegedly possess under the Franchise Agreements." (ECF No. 16, at 2). At bottom, MBE's argument is equitable in nature: it would be unfair for Plaintiffs to assert claims against MBE based on the Franchise Agreements while simultaneously repudiating the arbitration clauses set forth in the very same contracts. MBE's argument is persuasive.

Arbitration is generally a matter of contract, so "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (internal quotation marks omitted). In certain circumstances, however, "a nonsignatory can enforce . . . an arbitration provision within a contract executed by other parties." *Id.* at 416–17.[6] Relevant here,

> equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its

---

[6] Federal common law, rather than state law, applies to MBE's equitable estoppel argument. *See Schwabedissen Maschinen*, 206 F.3d at 417 ("[T]he determination of whether . . . a nonsignatory[] is bound by [an arbitration clause] presents no state law question of contract formation or validity" and instead requires analysis under "'the federal substantive law of arbitrability.'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

10

> claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to, or presumes the existence of, the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005) (internal quotation marks and alterations omitted). To assess whether a signatory's claims against a nonsignatory arise out of and relate directly to the agreement containing the arbitration clause, the underlying complaint must be examined. *Am. Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006).

In this case, equitable estoppel applies because Plaintiffs' claims arise out of and relate directly to the Franchise Agreements. Specifically, Plaintiffs assert causes of action against MBE for breach of the Franchise Agreements and for fraudulent inducement based on MBE's alleged misrepresentations in connection with their decision to assume the obligations under the Franchise Agreements. (ECF No. 2, ¶¶ 37-40; 50-67). Plaintiffs also seek a declaration that MBE cannot enforce the Franchise Agreements' non-compete covenants. (ECF No. 2, ¶¶ 41-49). Each of Plaintiffs' claims against MBE thus makes reference to, and presumes the existence of, the Franchise Agreements. In other words, but for the Franchise Agreements, Plaintiffs would have no basis for recovery on their

claims. *Iraq Middle Mkt. Dev. Found. v. Al Harmoosh*, 769 F.Supp.2d 838, 841-42 (D.Md. 2011) (because the plaintiff "would have no basis for recovery" against the non-signatory defendant absent the agreement containing the arbitration clause, the plaintiff was "estopped from asserting that [the defendant] is not a party to the arbitration clause"). Accordingly, Plaintiffs are estopped from arguing that MBE cannot enforce the arbitration clauses because of its nonsignatory status.

### B. Unconscionability

Plaintiffs alternatively contend that the arbitration clauses in the Franchise Agreements are unenforceable because they "raise both procedural and substantive unconscionability concerns." (ECF No. 13, at 3-9). Plaintiffs further assert that the court has the authority to address their unconscionability arguments. (*Id.* at 9). MBE responds that the arbitration clauses are neither procedurally nor substantively unconscionable but that, in any event, this issue should be deferred until arbitration, at which time Plaintiffs can "re-raise their objections." (ECF No. 16, at 9-10). MBE's latter argument carries the day because the arbitrator, rather than this court, must decide whether the Franchise Agreements' arbitration clauses are unconscionable.

Typically, a challenge to the validity of an arbitration clause is decided by the court. *E.g.*, *Coll. Park Pentecostal*

*Holiness Church v. Gen. Steel Corp.*, 847 F.Supp.2d 807, 814 (D.Md. 2012). That presumption can be overcome, however, where the parties "clear[ly] and unmistakabl[y]" give the arbitrator responsibility for determining "gateway" questions of arbitrability *via* a delegation provision. *Rent-A-Center, West, Inc. v. Jackson*, --- U.S. ---, 130 S.Ct. 2772, 2776-77 & n. 1 (2010). Because a delegation provision itself constitutes a "written provision . . . to settle by arbitration a controversy" under section 2 of the FAA that is severable from the broader arbitration agreement, it must be enforced unless a party raises a *specific* challenge to its validity. *Id.* at 2777. Absent such a challenge, arguments regarding the validity of "another provision of the contract, or [] the contract as a whole" are left for the arbitrator. *Id.* at 2778 (because the employee did not specifically contest the validity of the delegation clause, his argument that the arbitration agreement was unconscionable was for the arbitrator to decide).

Here, in arguing that Plaintiffs' unconscionability arguments are "severable from the forum question" and should be referred to the arbitrator "consistent with the arbitration provisions" (ECF No. 16, at 9), MBE appears to contend that the Franchise Agreements contain an enforceable delegation provision. The arbitration clauses state that

> [E]very controversy, claim or dispute arising out of or in connection with the negotiation, performance or non-performance of this Agreement, including, without limitation, any alleged torts and/or claims regarding *the validity, scope, and enforceability of this Section*, shall be *solely and finally settled by binding arbitration* . . . .

(ECF No. 9-1, at 41; ECF No. 9-2, at 41) (emphasis added). This language unequivocally delegates to the arbitrator all claims regarding the validity of the arbitration clauses and therefore constitutes a clear and unmistakable delegation provision. *See Thornton v. First Nat'l Bank Credit Card*, No. 3:12-04922012 RCC, 2012 WL 4356280, at *3 (S.D.W.Va. Sept. 24, 2012) (clear-and-unmistakable standard met where the parties agreed that "any Dispute will be resolved by Arbitration" and "Dispute" was defined as "any controversy or claim between you and us[, . . . and] includes, by way of example and without limitation, . . . any issue concerning *the validity, enforceability or scope* of this agreement") (emphasis added).

What is more, under *Rent-A-Center*, the delegation clauses must be enforced pursuant to the FAA because Plaintiffs' unconscionability arguments are not specifically directed to the provisions.[7] With respect to procedural unconscionability,

---

[7] It is irrelevant that this case involves three layers (a franchise contract containing an arbitration clause containing a delegation provision) as opposed the two layers at issue in

14

Plaintiffs generally assert that the entire arbitration clause is unconscionable because Mr. Sengottuvelu – an "unsophisticated investor" who had been in the United States "for just 13 years" when he signed the Transfer Agreement – never received copies of the Franchise Agreements prior to this litigation and "never knowingly agreed to arbitrate any disputes." (ECF No. 13, at 5). As to substantive unconscionability, however, Plaintiffs focus on a single provision in the clauses that limits the relief available to franchisees in arbitration. (*Id.* at 7). In *Rent-A-Center*, the Court noted that because Nevada law requires a showing of both procedural and substantive unconscionability, "we need not consider th[e] [procedural unconscionability] claim because none of [the plaintiff's] substantive unconscionability challenges was specific to the delegation provision." *Rent-A-Center*, 130 S.Ct. at 2780. Likewise here, because California law requires both procedural and substantive unconscionability

---

*Rent-A-Center* (an arbitration contract containing a delegation clause) because that case "did not turn on the fact that the agreement was a 'stand-alone' arbitration agreement." *Madgrigal v. AT&T Wireless Servs., Inc.*, No. 1:09-cv-0033-OWW-MJS, 2010 WL 5343299, at *3 (E.D.Cal. Dec. 20, 2010); *see also In re Toyota Motor Corp.*, 838 F.Supp.2d at 982 (after *Rent-A-Center*, "[t]he presence of a delegation provision . . . narrows the [c]ourt's role" to examining *only* "whether there is a valid delegation provision"; if there is, the delegation clause must be enforced, "reserving for the arbitrator issues *that implicate the agreement to arbitrate as a whole*, as well as larger issues such as the validity of the contract as a whole or determination of the scope of arbitrable claims") (emphasis added).

before a contract provision can be deemed unenforceable, *see Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000), Plaintiffs' procedural arguments need not be reached because the only provision challenged on substantive grounds is the limitation-of-damages clause.[8]

In sum, because Plaintiffs do not raise any substantive challenges to the clear and unmistakable delegation provisions contained in the Franchise Agreements, the provisions must enforced under the FAA and *Rent-A-Center*, leaving Plaintiffs' unconscionability arguments to be addressed by the arbitrator.[9] Until the arbitrator decides this gateway issue, it will not be

---

[8] As noted above, the Franchise Agreements both contain a California choice-of-law provision. (ECF No. 9-1, at 46-47; ECF No. 9-2, at 46-47). Subject to two exceptions not implicated here, Maryland courts will respect contractual choice-of-law provisions. *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 618 (2007). In their opposition, Plaintiffs cite to both California and Maryland case law, but offer no argument as to why California law would not apply here. In any event, Maryland also follows the "prevailing view" that both procedural and substantive unconscionability must be shown to render a contract provision unenforceable. *Freedman v. Comcast Corp.*, 190 Md.App. 179, 207-08 (2010).

[9] None of the parties address the provision in the Franchise Agreements stating that "[i]n the event of any controversy or claim, the parties shall first attempt to resolve the matter through good faith, informal negotiations, including, upon mutual agreement, non-binding mediation." (ECF No. 9-1, at 41; ECF No. 9-2, at 41). Even if they had been raised, any arguments about the effect of this provision – including whether it is a condition precedent to enforcing the arbitration clauses – would properly be decided by the arbitrator in accordance with the delegation provisions.

clear that "all of the issues presented in [this] lawsuit are arbitrable." *BSR Tropicana Resort, Inc.*, 252 F.3d at 709–10. Thus, this action will be stayed rather than dismissed. *See Sher v. Goldman Sachs*, No. CCB-11-2796, 2012 WL 1377066, at *6 (D.Md. Apr. 19, 2012) (dismissal not warranted where "the court has found that the arbitrator should decide whether [the plaintiff's] claims are arbitrable").

## IV. Conclusion

For the foregoing reasons, the motion to stay and to compel arbitration filed by Defendant Mail Boxes Etc. Inc. will be granted. A separate order will follow.

                                                            /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge